# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE B.,<br><br>                                       Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>                                       Defendant. | Case No.:  3:20-cv-00653-RBM<br><br>**ORDER REMANDING DECISION OF COMMISSIONER OF SOCIAL SECURITY**<br><br>**[Docs. 11, 12]** |

## I.      INTRODUCTION

Plaintiff Bonnie B. ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of the Social Security Administration's ("Defendant" or "Commissioner" or "SSA") final decision denying Plaintiff's application for Social Security disability benefits and disabled widow's benefits under Title II of the Social Security Act ("the Act").  (Doc. 1.)

Before the Court are Plaintiff's Merits Brief ("Merits Brief") (Doc. 11),[1] Defendant's combined Cross-Motion for Summary Judgment and Opposition to Plaintiff's Merits Brief

---

[1] As set forth in the briefing schedule (Doc. 10), the undersigned ordered Plaintiff to file a merits brief pursuant to Civil Local Rule 7.1(e)(6)(e).  Plaintiff, however, titled the brief "Memorandum of Points and

1  ("Cross-MSJ") (Doc. 12), and Plaintiff's combined Reply and Opposition to Defendant's

2  Cross-MSJ (Doc. 13).

3      The parties consented to the undersigned's jurisdiction.  (Doc. 6; Gen. Or. 707.)

4  Considering the papers, the Administrative Record ("AR"), the facts, and the applicable

5  law, Plaintiff's Merits Brief is **GRANTED**, Defendant's Cross-MSJ is **DENIED**, and the

6  Administrative Law Judge's ("ALJ") decision is **REMANDED** for further proceedings.

7              **II.   BACKGROUND & PROCEDURAL HISTORY**

8      On November 27, 2018, Plaintiff filed an application for a period of disability and

9  disability insurance benefits under Title II of the Act.  (AR at 27; *see* Doc. 11-1 at 6.)[2]

10  Plaintiff alleged an onset of disability as of June 30, 2015.  (AR at 27.)

11      Plaintiff chiefly complains of disabling impairments due to right sacroiliac joint

12  strain, arthralgia, osteoporosis, irritable bowel syndrome ("IBS"), post-traumatic stress

13  disorder ("PTSD"), major depressive disorder, adjustment disorder with anxiety, and

14  bipolar disorder not otherwise specified. (*See id.* at 30, 34, 55-57.)  Plaintiff has prior work

15  experience as an interior designer, residence leasing agent, and real estate sales agent. (*Id.*

16  at 38.)  Upon applying for disability benefits, Plaintiff alleged that her impairments render

17  her incapable of performing work. (*See id.* at 34, 264.)

18      The SSA denied Plaintiff's claim initially and on reconsideration. (*Id.* at 27.)  Next,

19  Plaintiff requested a hearing before an ALJ, which occurred on December 6, 2018.  (*Id.*)

20  At the hearing, the ALJ elicited testimony from Plaintiff and a vocational expert ("VE").

21  (*Id.* at 27, 85-91.)

22      On December 27, 2018, the ALJ's written decision found Plaintiff not disabled under

23  the Act.  (*Id.* at 27-40.)  On January 29, 2020, after the Appeals Council denied review of

24  the ALJ's decision, the decision became final under 42 U.S.C. § 405(h).  (*Id.* at 1-7.)

---

26  Authorities in Support of a Motion for Summary Judgment" and inappropriately cited Federal Rule of

27  Civil Procedure 56 (i.e., summary judgment).  (Doc. 11-1.)  Hereafter, Plaintiff's brief will be referred to
    as a Merits Brief.

28  [2] All AR citations refer to the number on the bottom right-hand corner of the page, rather than page
    numbers assigned by the CM/ECF system.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   SUMMARY OF ALJ'S FINDINGS

The ALJ held Plaintiff met the insured status requirements of the Act through September 20, 2021.  (AR at 29.)  The ALJ followed the five-step sequential evaluation process to determine Plaintiff's disability status.  *See* 20 C.F.R. § 404.1520(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2015, the alleged onset date.  (AR at 30.)  Plaintiff worked after the alleged disability onset date, but it was deemed an unsuccessful work attempt.  (*Id.*)  Plaintiff earned $28,262.36 between April 2017 to October 2017.  (*See id.* at 30, 258-62.)  At the hearing, Plaintiff testified that she could not maintain her level of performance due to her impairments, so she stopped working by October 4, 2017.  (*Id.* at 30, 54-55, 192.)  Because the period of work was less than six months and ended because of Plaintiff's impairments, the ALJ determined the work was an unsuccessful work attempt and not substantial gainful activity.  (AR at 30); *see* 20 C.F.R. § 404.1574(c); *see also* SSR 84-25.

At step two, the ALJ found Plaintiff suffers from the following severe impairments: (1) right sacroiliac joint strain; (2) arthralgia; (3) osteoporosis; (4) IBS; (5) PTSD; (6) major depressive disorder; (7) adjustment disorder with anxiety; and (8) bipolar disorder, not otherwise specified.  (AR at 30); *see* 20 C.F.R. § 404.1520(c).  The ALJ found Plaintiff's hyperlipidemia, hypothyroidism, skin cancer, eating disorder, hearing impairments, and chest pains were not severe impairments.  (AR at 30-31.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (*Id.* at 31-33.)  Specifically, the ALJ determined that Plaintiff did not meet or equal Listings 1.02A, 1.02B, 1.04, 5.06, 12.04, 12.06, or 12.15.  (*Id.*)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c).  (AR at 33.)  The RFC included the following limitations:

> [f]requent climbing of ramps or stairs; frequent climbing of ladders, ropes, and scaffolds; and frequent balancing, stooping, kneeling, crouching, and crawling.  In

3

1    addition, the [Plaintiff] is limited to occasional interaction with the general public;
2    occasional work-related, non-personal, non-social interaction with workers and
3    supervisors; and can only perform work that does not require satisfaction of
     production quotas.

4    (*Id.*)

5         In determining the RFC, the ALJ considered all symptoms and the extent to which
6    these symptoms can reasonably be accepted as consistent with the objective medical
7    evidence and other evidence, as required by 20 C.F.R. § 404.1529 and SSR 16-3p. (*Id.*)
8    The ALJ also considered medical opinion evidence under 20 C.F.R. § 404.1527. (*Id.*)

9         In analyzing the same, the ALJ assigned "great weight" to the opinions of
10   consultative examiner J. Altman, M.D. ("Dr. Altman") and P. Ombres, M.D. ("Dr.
11   Ombres"), finding the opinions consistent with the medical evidence. (*Id.* at 36.) The ALJ
12   only assigned "little weight" to the opinion of state agency medical consultant J. Hartman,
13   M.D. ("Dr. Hartman"), finding the opinion inconsistent with the medical record. (*Id.*)

14        As to opinions evaluating Plaintiff's mental impairments, the ALJ reviewed but did
15   not assign weight to the opinion of state agency mental consultant Janet Anguas-Keiter,
16   Psy.D. ("Dr. Anguas-Keiter"). (*Id.*) The ALJ also reviewed but did not assign weight to
17   Hillary Wiess, Ph.D. ("Dr. Wiess"), who agreed with Dr. Anguas-Keiter's mental RFC
18   assessment. (*See id.* at 36-37, 117.) The ALJ assigned "some weight" to the opinion of
19   treating doctor Dan Metevier, Psy.D. ("Dr. Metevier"), finding it somewhat inconsistent
20   with the medical record. (S*ee id.* at 37, 575-611.) Specifically, the ALJ contrasted Dr.
21   Metevier's finding that Plaintiff is completely unable to manage stress with her ability to
22   work for several months in 2017. (S*ee id.* at 37, 702.) The ALJ reviewed Plaintiff's Global
23   Assessment of Functioning ("GAF") scores but gave them "no weight" and determined
24   they are of no evidentiary value. (*Id.* at 37.) Instead, the ALJ gave "great weight to the
25   narrative statements in the psychiatric evaluations, treatment history, and objective details
26   and chronology" of record. (*Id.*) The ALJ assigned "little weight" to the opinion of Amad
27   Kadry, M.D. ("Dr. Kadry") finding it remote in time and not reflected in current mental
28   treatment. (*See id.* at 37, 380.) Likewise, the ALJ gave the opinion of Vickie Woods,

4

1    Licensed Marriage and Family Therapist ("LMFT") "little weight" for failing to assign

2    functional limitations and because an LMFT is not an acceptable medical source. (*See* AR

3    at 37; *see also* 20 C.F.R. § 404.1513.)

4        Lastly, the ALJ reviewed the opinion of Plaintiff's former roommate, Jaime Kallweit

5    ("Ms. Kallweit"), who submitted a third-party function report. (AR at 37, 300-09.)  The

6    ALJ gave Ms. Kallweit's report "little weight," finding it "based on casual observation and

7    not clinical testing." (*Id.*)

8        Ultimately, the ALJ found Plaintiff's medically determinable impairments could

9    reasonably be expected to cause the alleged symptoms. (*Id.* at 34.) But the ALJ found her

10   statements concerning the intensity, persistence and limiting effects of these symptoms as

11   not entirely consistent with the medical evidence. (*Id.*)  The ALJ so held because "the

12   medical evidence does not support the alleged loss of functioning." (*Id.*)

13       At step four, the ALJ found Plaintiff unable to perform any past relevant work as an

14   interior designer or as a residence leasing agent, which are skilled light exertion jobs

15   actually performed at medium exertion. (*Id.* at 38.) The ALJ also found Plaintiff unable

16   to perform past relevant work as a real estate sales agent, a skilled light exertional job. (*Id.*)

17       At step five, after considering Plaintiff's age, education, work experience and RFC,

18   the ALJ found there are jobs existing in significant numbers in the national economy that

19   Plaintiff can perform. (*Id.*)  Specifically, the ALJ found Plaintiff able to perform jobs at

20   the unskilled medium exertional level such as a laundry worker II, hospital cleaner, and

21   industrial sweeper-cleaner. (*Id.* at 39.)  Because the ALJ found Plaintiff capable of

22   performing jobs existing in significant numbers in the national economy, the ALJ

23   determined Plaintiff is not disabled under the Act. (AR at 39); 20 C.F.R. § 404.1520(g).

24                        **IV.  ISSUES IN DISPUTE**

25       This Court's review is limited to five issues:

26       1. Did the ALJ properly evaluate Dr. Metevier's opinion and provide clear and

27   convincing reasons to reject it? (Doc. 11-1 at 10-13; Doc. 12 at 3-4, 6-8; Doc. 13 at 2-4.)

28   / / /

2. Did the ALJ properly evaluate Dr. Anguas-Keiter's opinion? (Doc. 11-1 at 16-18; Doc. 12 at 5-6; Doc. 13 at 7-8.)

3. Did the ALJ give germane reasons for rejecting the third-party opinion of Ms. Kallweit? (Doc. 11-1 at 13-14; Doc. 12 at 12-13; Doc. 13 at 4-6.)

4. Did the ALJ provide specific, clear and convincing reasons to reject Plaintiff's mental impairment allegations? (Doc. 11-1 at 18-21; Doc. 12 at 10-12; Doc. 13 at 8-10.)

5. Did the ALJ properly consider Plaintiff's mental impairments and limitations in making an RFC determination? (Doc. 11-1 at 14-16; Doc. 12 at 7-8; Doc. 13 at 6-7.)

## V.   <u>STANDARD OF REVIEW</u>

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "[F]ederal court review of social security determinations is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold an ALJ's disability determination if it is free of legal error and is supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence is "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts" from the ALJ's conclusion. *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *E.g.*, *Garrison*, 759 F.3d at 1010 (internal citation omitted). When evidence supports more than one rational interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Stated differently, when "the evidence can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]."

1  *Garrison*, 759 F.3d at 1010 (internal citation omitted). Rather, the Court only reviews the

2  reasons provided by the ALJ and may not affirm the ALJ on other grounds. *Id.*

3  ## VI.  **DISCUSSION**

4  Plaintiff contends that the ALJ erred on five grounds: (1) the ALJ improperly

5  paraphrased Dr. Metevier's opinion and did not to give specific and legitimate reasons to

6  reject the opinion (Doc. 11-1 at 10-13); (2) the ALJ improperly rejected Ms. Kallweit's

7  opinion without providing germane reasons to reject it (Doc. 11-1 at 16-18); (3) the ALJ

8  erred in omitting Plaintiff's mental functioning limitations from the RFC analysis (Doc.

9  11-1 at 13-14); (4) the ALJ failed to include Dr. Anguas-Keiter's complete opinion nor

10  assign it any weight (Doc. 11-1 at 18-21); and (5) the ALJ's credibility finding is flawed,

11  because it translates Plaintiff's daily activities into the ability to work a full-time job (Doc.

12  11-1 at 14-16). Defendant counters that the ALJ properly considered and weighed all of

13  the evidence, including Plaintiff's mental functioning in the RFC analysis, Plaintiff's

14  subjective allegations, and Ms. Kallweit's opinion. (Doc. 12 at 3-13.)

15  ### A.    **The ALJ Did Not Properly Evaluate Dr. Metevier's Opinion**

16  The ALJ improperly paraphrased Dr. Metevier's opinion by inserting findings the

17  doctor did not make, and he did not provide clear and convincing reasons to reject that

18  opinion. (*See* AR at 37, 580-81.)

19  ### i.  *Duty to Evaluate a Treating Doctor's Opinion*

20  A treating doctor's opinion is given controlling weight when it is "well supported by

21  clinical and laboratory diagnostic techniques and is [consistent] with other substantial

22  evidence" in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). But when

23  a treating doctor's opinion is contradicted by another doctor, the ALJ may only discount

24  the treating opinion by providing specific and legitimate reasons supported by substantial

25  evidence. *Id.* To reject an uncontradicted treating or examining doctor's opinion, the "ALJ

26  must state clear and convincing reasons" supported by substantial evidence. *Id.* at 676.

27  The ALJ fails to provide specific and legitimate reasons for rejecting a medical opinion

28

where he misstates the opinion and fails to provide sufficient analysis. *See Godlinez v. Berryhill*, SACV 17-0194 SS, 2017 WL 6349720, at *7 (C.D. Cal. Dec. 11, 2017).

### ii. Analysis

An ALJ may paraphrase medical evidence but cannot do so in a manner "not entirely accurate regarding the content or tone of the record." *Reddick*, 157 F.3d at 721-22.

Considering Dr. Metevier's opinion and the ALJ's analysis of the same, the ALJ erred in paraphrasing portions of Dr. Metevier's findings. (AR at 37, 580-81.) Here, the findings mentioned by the ALJ are largely accurate and consistent with tone of the cited opinion. (*Id.*) But the ALJ made one significant change: the ALJ cited Dr. Metevier's opinion as finding Plaintiff "unable to adapt to stress." (*Id.* at 37.) Dr. Metevier does not make such a finding explicitly nor can this finding be reasonably inferred from Dr. Metevier's opinion. (*Id.* at 575-611.) And Defendant agrees. (Doc. 12 at 8 ("Plaintiff also asserts that Dr. Metevier found Plaintiff was 'unable to adapt to stress' . . . however, the pages of the record . . . do not appear to reflect any such finding by Dr. Metevier.").)

This change is significant, because the ALJ rejected Dr. Metevier's opinion based on Plaintiff's work history being inconsistent with the "complete inability to manage stress." (AR at 37.) The ALJ cannot, without sufficient analysis, draw a conclusion from Dr. Metevier's opinion it did not state and then proceed to reject that opinion on that basis. *Godlinez*, 2017 WL 6349720, at *7; *see Reddick*, 157 F.3d at 721-22. As such, the ALJ erred in his paraphrasing of Dr. Metevier's decision.

The ALJ also failed to provide clear and convincing reasons to reject Dr. Metevier's opinion. It is undisputed that Dr. Metevier's opinion is that of a treating physician. (Doc. 11-1 at 11; Doc. 12 at 5.) Because Dr. Metevier's opinion is uncontradicted by another doctor's opinion, the ALJ must state clear and convincing reasons supported by substantial evidence to reject that opinion. *Trevizo*, 871 F.3d at 675.

Here, the ALJ failed to offer a clear and convincing reason to reject Dr. Metevier's opinion by relying solely upon Plaintiff's failed work attempt. (*See* AR at 37.) A failed "work attempt alone is not a clear and convincing reason" to reject a treating doctor's

opinion. *See Jalexis O. v. Berryhill*, 17-cv-00172-MC, 2018 WL 4931996, at *8 (D. Or. Oct. 10, 2018) ("the ALJ . . . cannot use an unsuccessful work attempt to discredit the opinion of an examining physician who assesses limitations that would not allow a successful return to work."); *cf. Lingenfelter*, 504 F.3d at 1040 ("the work attempt alone is not a clear and convincing reason" to discredit "[plaintiff's] testimony about his pain and physical" limitations.). In fact, a failed attempt to return to work, rendered unsuccessful solely by Plaintiff's symptoms and limitations, strengthens findings consistent with disability. *See Jalexis O.*, 2018 WL 4931996, at *8 (citing *Lingenfelter*, 504 F.3d at 1038).

In sum, the ALJ erred in paraphrasing Dr. Metevier's opinion without sufficient analysis and for failing to cite clear and convincing reasons to reject Dr. Metevier's opinion. *See Reddick*, 157 F.3d at 721-22; *see also Trevizo*, 871 F.3d at 675.

## B. <u>The ALJ Erred in Failing to Assign Weight to Dr. Anguas-Keiter's Opinion</u>

The ALJ did not assign any weight to Dr. Anguas-Keiter's opinion. (*See* AR at 36-37, 99-101, 115-17.) This is error.

### i. *Duty to Evaluate Medical Opinions*

The ALJ must consider medical opinions of record together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b). The ALJ must also evaluate every medical opinion received and consider the factors in 20 C.F.R. § 404.1527(c)(1)-(6) in deciding the weight to give to such opinions. 20 C.F.R. § 404.1527(c).

An ALJ must assign weight to every medical opinion received. *See Garrison*, 759 F.3d at 1012-13 ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."); *see also* 20 C.F.R. § 404.1527(c) ("we will evaluate every medical opinion we receive" and "will always give good reasons . . . for the weight we give your treating source's medical opinion.")). But the ALJ need not assign a specific evidentiary weight to a medical opinion. *See* 20 C.F.R. § 404.1527(c).

Generally, more weight should be given to a treating source's opinion than the opinion of a non-treating source. *Garrison*, 759 F.3d at 1012. The weight given to a treating physician is greater than that of an examining physician, and an examining physician is given more weight than that of a non-examining physician. *Id.* The ALJ errs where he does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another. *Id.*

### ii. Analysis

It is clear the ALJ considered the opinions of state agency mental consultants Drs. Anguas-Keiter and Weiss from the ALJ's summary of their findings. (AR at 36-37.) But what is unclear from the decision is the degree to which the ALJ agreed, disagreed, or relied upon these opinions. (*Id.*)

Although the ALJ is not required to assign a medical opinion a specific weight, the ALJ must assign medical opinions some weight. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *see also* 20 C.F.R. § 404.1527(c). The ALJ weighs medical opinions to help express the persuasiveness of the opinion to the ALJ. *See* 20 C.F.R. § 404.1520(c)(1)-(6). In the absence of any weight accorded to a medical opinion, Plaintiff has little recourse to rebut the ALJ's rejection or omission of the opinion. Therefore, the ALJ erred in not explicitly rejecting Dr. Anguas-Keiter's medical opinion. *Garrison*, 759 F.3d at 1012-13.

### C. The ALJ Failed to Provide Germane Reasons for Rejecting Ms. Kallweit's Opinion

The ALJ assigned "little weight" to Ms. Kallweit's third-party lay opinion, because it was based "on casual observation and not clinical testing[.]" (AR at 37.) This is not a germane reason to reject this opinion.

### i. Duty to Evaluate Lay Opinions

"Lay testimony as to a [plaintiff]'s symptoms is competent evidence that an ALJ must take into account, unless he or she expressly . . . disregard[s] such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Friends in a

position to observe a plaintiff's symptoms and daily activities are competent to testify as to that person's condition. *Id.*

The ALJ may not discredit lay opinion for a "lack of support from the 'overall medical evidence . . . .'" *Id.* (citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("[n]or under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). Nor is lack of support from medical records a germane reason to give "little weight" to that opinion. *Id.* But the ALJ may reject portions of lay opinion beyond the witness' competence, such as medical conclusions or diagnoses. *Gump v. Comm'r of Soc. Sec.*, 222 F. App'x 553, 554-55 (9th Cir. 2007); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("medical diagnoses are beyond the competence of lay witnesses and [are not] competent evidence.").

### ii. Analysis

Here, the ALJ erred by failing to give germane reasons for rejecting the lay opinion of Ms. Kallweit. (AR at 37, 300-09.) Ms. Kallweit's lay opinion, as that of a friend who has observed Plaintiff's symptoms and daily activities, is competent evidence the ALJ must consider. *Diedrich*, 874 F.3d at 640. As Plaintiff argued, Ms. Kallweit's report is precisely the type of opinion evidence valuable to an ALJ's disability determination. *Diedrich*, 874 F.3d at 640; (*see* Doc. 11-1 at 14.) Lay opinion testimony need not rely on clinical testing, and it is error to discredit or otherwise reject "lay testimony as not supported by medical evidence in the record." *See Diedrich*, 874 F.3d at 640. Although the ALJ may reject Ms. Kallweit's opinion, rejecting a lay opinion as based on causal observation and not clinical testing are not germane reasons. *See id.*

Defendant contends that Ms. Kallweit's opinion is outside her competency and is duplicative of Plaintiff's arguments and thus should be rejected. (Doc. 12 at 12-13.) But the ALJ did not cite any portions of Ms. Kallweit's opinion akin to medical conclusions or diagnoses outside her competence. (*See* AR at 37.) Even assuming *arguendo* Ms. Kallweit offered opinion outside her competency and the ALJ cited this reason, the ALJ could only reject the incompetent portions and not blanket reject the entire opinion. *Gump*, 222 F.

App'x at 554-55. As to Ms. Kallweit's opinion being duplicative of Plaintiff's allegations, the ALJ did not cite this reason for rejecting the opinion. (*See* AR at 37.) The Court only reviews the reasons provided by the ALJ and may not affirm on other grounds. *Garrison*, 759 F.3d at 1010. Thus, it is error to reject Ms. Kallweit's opinion on this ground. *See Diedrich*, 874 F.3d at 640. To reject competent lay testimony, the ALJ must give germane reasons as "to each witness for doing so" and cannot apply the reasons to reject one witness to all witnesses. *Id.*

In sum, the ALJ erred by failing to give a germane reason to reject Ms. Kallweit's lay opinion. *Id.*

### D. The ALJ Failed to Provide Specific, Clear and Convincing Reasons to Reject Plaintiff's Mental Impairment Allegations

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding these symptoms were not entirely consistent with the medical evidence and other evidence of record. (*See* AR at 35-36.) In rejecting Plaintiff's subjective allegations of impairment, the ALJ cited to Plaintiff's improvement with treatment and refusal of treatment, her minimal daily activities, and her failed work attempt. (*See id.*) However, for the reasons outlined below, these are not specific, clear and convincing reasons.

#### i.  Duty to Evaluate Subjective Claims of Impairments

The ALJ engages in a two-step analysis to assess the credibility of a plaintiff's testimony regarding subjective pain or the intensity of symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ determines whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* If the plaintiff satisfies the first step, an ALJ can reject the plaintiff's subjective allegations of impairment only upon (1) finding evidence of malingering, or (2) expressing specific, clear and convincing reasons for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). In addition to objective medical evidence, an ALJ must consider the factors in 20 C.F.R. § 404.1529 to assess the credibility of

1   symptoms.   In assessing credibility, the ALJ may consider the consistency between

2   plaintiff's allegations of disabling impairments with the objective medical evidence,

3   plaintiff's daily activities, and plaintiff's ability to treat symptoms with medication.  *E.g.,*

4   *Lingenfelter*, 504 F.3d at 1040.

5        Generally, questions of credibility and resolution of conflicts in the testimony are

6   duties left to the ALJ.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  An ALJ may

7   discredit a plaintiff's subjective statements of impairment, but the ALJ must "identify what

8   testimony is not credible and what evidence undermines [that testimony]."  *See, e.g.*, *Berry*

9   *v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010).

10        *ii.   Improvement with Treatment and Refusal of Treatment*

11        The ALJ did not provide specific, clear and convincing reasons to reject Plaintiff's

12   symptom statements, when he cited Plaintiff's refusal of treatment and improvement with

13   treatment.

14        Impairments that can be controlled effectively with medication are not disabling.

15   *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see* 20 C.F.R.

16   § 404.1529(c)(3)(iv) (medications may be considered in assessing plaintiff's subjective

17   symptoms).  Declining further treatment is inconsistent with disabling mental impairments,

18   and the ALJ may consider this in his credibility finding.  *Tommasetti v. Astrue*, 533 F.3d

19   1035, 1039 (9th Cir. 2008) ("the ALJ may consider many factors in weighing a [plaintiff's]

20   credibility, including . . . unexplained or inadequately explained failure to seek treatment

21   or to follow a prescribed course of treatment . . . .") (internal quotations omitted).

22        But "it is a questionable practice to chastise one with a mental impairment for the

23   exercise of poor judgment in seeking rehabilitation."  *Garrison*, 759 F.3d at 1018 n.24

24   (quoting *Nguyen*, 100 F.3d at 1465).  The Court does "not punish the mentally ill for

25   occasionally going off their medication when the record affords [a] compelling reason to

26   view such departures" as part of Plaintiff's impairments.  *Id.*

27        The ALJ cited records that Plaintiff was prescribed an emotional support dog in

28   2017.  (AR at 35, 696.)  The ALJ also cited progress notes where Plaintiff reported that

Adderall helped her cry less and that Wellbutrin was helpful. (*Id.* at 35, 506, 519.) But in 2017, Plaintiff declined further psychotropic medications or mental health treatment. (*Id.* at 35, 693.) Plaintiff states she stopped taking medications in December 2017, because they "contributed to me feeling suicidal . . . ." (AR at 74.) Plaintiff also explains that she stopped regular mental health treatment because she lost her insurance. (*Id.* at 73-74.) Plaintiff adequately explained her sporadic departure from recommended treatment. *See Garrison*, 759 F.3d at 1018 n.24.

The ALJ also noted that her "mental impairments show improvement with treatment." (AR at 35.) The ALJ stated that Plaintiff's most recent mental status examinations were normal, citing to June 25, 2018 progress notes. (*Id.* at 35, 682.) The ALJ stated these notes revealed normal behavior, mood, memory, thought process and content, good insight and judgement, and no suicidal ideation. (*See id.* at 35, 682-83.) The ALJ opined this "contravenes [Plaintiff's] alleged loss of functioning." (*Id.* at 35.) An ALJ may consider a lack of medical findings or largely normal findings as a basis to discredit Plaintiff's allegations. *See Burch v. Barnhart*, 400 F.3d 676, 681. Although it is error to reject mental health issues based on isolated instances of improvement, the ALJ may use evidence of improvement with treatment to interpret Plaintiff's testimony regarding the severity of an impairment. *See Garrison*, 759 F.3d at 1017 ("[t]hey must also be interpreted [knowing] that improved functioning while being treated and while limiting environmental stressors does not always mean that a [plaintiff] can function effectively in a workplace.").

The Court takes note, however, that improvement or normal findings over time are useful but the data points chosen "must *in fact* constitute examples of broader development to satisfy the applicable [specific,] 'clear and convincing' standard." *Id.* at 1018. The ALJ fails to meet this demanding standard. *Id.* Rather than "describe [Plaintiff's] symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on these to discredit [Plaintiff]." *Id.* The ALJ cites a 2016

1  record where Plaintiff reports medication helping with symptoms and a 2018 examination

2  reflecting largely normal findings. (AR at 35, 506, 519, 682.) Two examples of temporary

3  periods of wellbeing in four years of alleged disability (2015-2018) hardly constitutes the

4  broader development of improvement necessary to meet the standard. *Garrison*, 759 F.3d

5  at 1018. Further, the ALJ's citation to the 2018 examination record appears misleading.

6  (*See* AR at 35, 682.) The ALJ states that Plaintiff reflected no suicidal ideation. (*Id.*) But

7  in the next page of the report, the doctor notes Plaintiff has "[c]hronic thoughts of suicide"

8  and is at "[m]oderate risk." (*Id.* at 683.) The report also details the extent of Plaintiff's

9  suicidal ideation: "[p]lan, thinks about it. Patient has researched best way to suicide and

10  stated that it is about 'being prepared' if she gets to the 'point of no return.'" (*Id.*) This

11  casts serious doubt on the use of the 2018 report to support a broader development of

12  improvement. (*See id.* at 35, 682.) Two singled out days of temporary well-being over

13  years of impairment do not constitute the broader development of improvement necessary

14  to be a specific, clear and convincing reason to reject Plaintiff's subjective allegations of

15  impairment. *Garrison*, 759 F.3d at 1018. This is especially true where the veracity of one

16  of the two reports is seriously cast into doubt. *See id.*

17          *iii.*    *Daily Activities*

18        The ALJ did not provide a specific, clear and convincing reason to reject Plaintiff's

19  impairment allegations when he cited Plaintiff's minimal daily activities.

20        In the ALJ's decision, the ALJ cited Plaintiff's function reports where she reports

21  difficulty with activities of daily living or care. (AR at 36, 276-85, 312-20.) The ALJ then

22  cited testimony that Plaintiff can dress and bathe herself and prepare her own meals to

23  contradict those statements. (*Id.* at 36.) Although an ALJ may consider a plaintiff's daily

24  activities to disregard symptom testimony, courts should not penalize plaintiffs "for

25  attempting to lead normal lives in the face of their limitations." *Contreras v. Saul*, 19-cv-

26  00482-GPC-NLS, 2020 WL 1650594, at *11 (S.D. Cal. Apr. 3, 2020) (quoting *Reddick*,

27  157 F.3d at 722). The Court is hard pressed to find the cited daily activities—that Plaintiff

28  can dress, bathe, and cook for herself—are inconsistent with her symptom testimony and

involve functions transferable to a work setting. *Contreras*, 2020 WL 1650594, at *11; *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("if a [plaintiff] is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, the ALJ may be justified in disregarding the [plaintiff's] symptom testimony.") (internal quotations and citation omitted).

By Plaintiff's own testimony, it takes her several hours to get ready each day: "I dress myself.  It takes me a couple of hours to get ready.  I take two showers a day to . . . calm me down . . . ." (AR at 77.)  Many activities of daily living, such as the activities cited by the ALJ, are not easily transferred to the more grueling workplace environment, where it may be impossible to regularly rest or take medication. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The fact that Plaintiff "regularly engages in some activity does not disprove a disability." *Contreras*, 2020 WL 1650594, at *11 (citing *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996) ("[t]he Social Security Act does not require that the [plaintiff] be utterly incapacitated to be eligible for benefits . . . .").).

The ALJ further cited Plaintiff's testimony that she finds it difficult to be around others. (AR at 36.)  To rebut this claim, the ALJ cites Plaintiff's statements that she does her own shopping when there are not too many people in the store. (*Id.*)  But Plaintiff's ability to go shopping with limited interactions is *consistent* with her allegations.  It is inappropriate to discredit Plaintiff on this ground, because the activity is not one Plaintiff can "spend a substantial part of [her] day engaged in" to be transferrable to a work setting. *Contreras*, 2020 WL 1650594, at *11 (quoting *Fair*, 885 F.2d 597, 603); *Vertigan*, 260 F.3d at 1049.  Plaintiff's hearing testimony explained the therapeutic purpose of her shopping: "I don't go out.  So I don't socialize with—interact with anybody. *Every once in a while*, I'll go out with a girlfriend to do a little shopping just to get me out, like to, *to live*." (AR at 76 (emphasis added).)  Again, courts should not penalize Plaintiffs attempting to lead normal lives, and this is especially true where the activity is done for therapeutic reasons. *Contreras*, 2020 WL 1650594, at *11 (citing *Vertigan*, 260 F.3d at 1050).  In any event, Plaintiff's shopping trips are not performed consistently enough to "mirror the

16

1  demands of a full-time job." *Id.* (quoting *Meier v. Astrue*, 404 F. App'x 150, 152 (9th Cir.

2  2010) (finding ALJ's rejection of plaintiff's testimony erroneous even where plaintiff

3  "occasionally engage[d] in more strenuous activities such as lifting bags of salt and garbage

4  and shoveling snow" because those activities were intermittent)).

5                      iv.     *Unsuccessful Work Attempt*

6          The ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's

7  allegations of disabling mental impairments in relying upon Plaintiff's 2017 unsuccessful

8  work attempt.  Plaintiff worked after her alleged onset date of disability for four months in

9  2017.  (AR at 30.)  Although Plaintiff stopped working because of her impairments, the

10  ALJ cited this work attempt to discredit Plaintiff's impairment allegations.  (*Id.* at 36, 702.)

11          The ALJ concluded that Plaintiff's unsuccessful work attempt tends to show her

12  ability to maintain at least some kind of employment.  (*Id.*)  But this finding contradicts

13  both regulation and caselaw.  *See Lingenfelter*, 504 F.3d at 1038 ("[i]t does not follow from

14  the fact that a [plaintiff] tried to work for a short period of time and, because of his

15  impairments, failed, that he did not then experience pain and limitations severe enough to

16  preclude him from maintaining substantial gainful employment.  Indeed, . . . evidence that

17  a [plaintiff] tried to work and failed actually supported his allegations of" disability.); SSR

18  84-25; 20 C.F.R § 404.1574(a)(1).   Rather, an attempt to return to substantial gainful

19  activity,  such  as  Plaintiff's  four-month  stint  here,  rendered  unsuccessful  solely  by

20  Plaintiff's symptoms and limitations, strengthens Plaintiff's credibility.  *See Lingenfelter*,

21  504 F.3d at 1038.

22          In sum, the ALJ failed to adequately reject Plaintiff's subjective mental impairment

23  allegations by solely relying upon Plaintiff's improvement with treatment, refusal of

24  treatment, minimal daily activities, and unsuccessful work attempt.  *Vertigan*, 260 F.3d at

25  1049; *see Garrison*, 759 F.3d at 1017-18; s*ee also Lingenfelter*, 504 F.3d at 1040.

26  / / /

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.    **The ALJ Erred in Failing to Incorporate Plaintiff's Mental Functional Limitation into the RFC Determination**

The ALJ's Step two analysis included a mental functional limitation.  (AR at 32-33.) Failing to incorporate this finding into the RFC analysis is error.  (*See id.*)

i.   *Duty to Consider Mild Impairments*

The ALJ must consider all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2); *Hutton v. Astrue*, 491 F. App'x 850, 850 (9th Cir. 2012).  The ALJ errs where he finds that plaintiff has mental limitations but omits them from the RFC without explanation. *See Michele M. v. Saul*, 19-cv-00272-JLB, 2020 WL 1450442, at *8-9 (S.D. Cal. Mar. 25, 2020); *see also Hutton*, 491 F. App'x at 851 ("[f]urther, while the ALJ was free to reject [plaintiff's] testimony as not credible, there was no reason for the ALJ to disregard his own finding that [plaintiff's] non[-]severe PTSD caused some 'mild' limitations in . . . concentration, persistence, or pace.").

ii.   *Analysis*

The ALJ determined Plaintiff has a mild limitation yet omitted this finding from his RFC determination.  (AR at 32.)  This is error.  *Michele M.*, 2020 WL 1450442, at *8-9; *see Hutton*, 491 F. App'x at 851.  The ALJ cited to a mental status examination showing Plaintiff had intact long and short-term memory to undermine the mild limitation finding. (AR at 32, 672.)  Although "the ALJ was free to reject [Plaintiff's] testimony as not credible, there was no reason . . . to disregard his own finding that [Plaintiff] . . . [had] some 'mild' limitations in" understanding, remembering, or applying information. *Hutton*, 491 F. App'x at 851; (*see* AR at 32, 536).

When the ALJ determined Plaintiff had a limitation, that limitation should have been included in his RFC analysis. *Hutton*, 491 F. App'x at 851.  To omit it was error.  *See id.*

F.    **The ALJ's Errors Were Not Harmless**

An ALJ's error is harmless when it is inconsequential to the ultimate nondisability determination.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  The Court looks at the record as a whole to determine whether the error alters the

1  outcome of the case. *See id.* "[T]he more serious the ALJ's error, the more difficult it

2  should be to show the error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th

3  Cir. 2015). The Court should be cautious to find an error harmless. *Id.*

4        The ALJ committed several errors that may have altered the ALJ's ultimate decision.

5  *Supra* Part VI.A-E., pp. 7-19; (*see* AR at 29-39.) A single error alone, if harmful, is

6  sufficient to remand. *See Marsh*, 792 F.3d at 1173. Here, one such error is the ALJ's

7  failure to assign weight to Dr. Anguas-Keiter's opinion. *Supra* Part VI.B., pp. 9-11;(*see*

8  AR at 36-37.) As stated, the failure to assign a medical opinion weight is error. *See*

9  *Garrison*, 759 F.3d at 1012-13. Defendant argues this error was harmless, but the Court

10  disagrees. (*See* Doc. 12 at 5-6.) Dr. Anguas-Keiter's opinion directly contradicts the ALJ's

11  findings. (*See* AR at 34, 101.) Dr. Anguas-Keiter found Plaintiff's allegations consistent

12  with the objective findings and medical evidence of record, but the ALJ found Plaintiff's

13  symptom statements not entirely consistent with the medical evidence. (*Id.*) Further, Dr.

14  Anguas-Keiter found Plaintiff has memory impairment issues. (*Id.* at 100 ("[m]emory

15  impairment—cannot remember unless written down.").) If the ALJ had properly

16  considered Dr. Anguas-Keiter's opinion, the RFC determination likely would have

17  changed as would the step five determination. As such, the ALJ's error was not harmless.

18  *See McClurkin v. Saul*, 19-00234 JMS-RT, 2020 WL 292187, at *7 (D. Haw. Jan. 21, 2020)

19  (holding ALJ's failure to consider or assign weight to a medical opinion was not harmless

20  error) (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)). This error alone is

21  sufficient to remand. *See Marsh*, 792 F.3d at 1173.

22        **G.   Remand is Appropriate**

23        The ALJ's error was not harmless, thus, the appropriate remedy is to remand for

24  further proceedings. *See Marsh*, 792 F.3d at 1173.

25        The Court may remand for benefits "where no useful purpose [is] served by further

26  administrative proceedings and the record [is] thoroughly developed." *Vertigan*, 260 F.3d

27  at 1053 (internal quotations omitted). In deciding whether to remand for benefits or for

28  further proceedings, the Court follows the three-step credit-as-true rule. *See Treichler*, 775

1   F.3d at 1100-02.  First, the Court determines if the ALJ failed to offer "legally sufficient

2   reasons for rejecting evidence." *Id.* at 1100.  Next, the Court determines whether the record

3   is fully developed, whether there are outstanding issues to be resolved before determining

4   disability, and whether further administrative proceedings would be useful. *Id.*  Finally, if

5   there are no outstanding issues, the Court may find "the relevant testimony credible as a

6   matter of law" and award benefits, so long as the record "leaves not the slightest uncertainty

7   as to the outcome of the proceeding." *Id.* at 1101.

8        Here, further administrative proceedings would prove useful, so the appropriate

9   remedy is remand.  First, the ALJ failed to offer legally sufficient reasons for rejecting

10  evidence on several occasions.  *Supra* Part VI.A-E., pp. 7-19.  Second, Defendant's

11  argument that VE testimony would be necessary to evaluate Plaintiff's ability to work at

12  step five of the sequential evaluation.  (*See* Doc. 12 at 15.)  Additional VE testimony,

13  together with the evidence to be reconsidered, will be useful to the ALJ's ultimate

14  determination.   And further administrative proceedings would be useful to properly

15  consider the supplemental record from Dr. Metevier, which the ALJ did not have the

16  opportunity to consider. (Doc. 11-1 at 8-9; AR at 17.)  Even assuming the first two steps

17  of the credit-as-true rule were met, the record has not shown that "entitlement to benefits

18  is clear . . . ." *See Treichler*, 775 F.3d at 1103-04.  As such, remand for further proceedings

19  is appropriate.

20       In sum, the ALJ's decision contained several errors, at least one of the errors was

21  not harmless, and further administrative proceedings would be helpful.  As such, Plaintiff's

22  Merits Brief is **GRANTED**, Defendant's Cross-MSJ is **DENIED**, and the ALJ's decision

23  is **REMANDED**.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.   **CONCLUSION**

For the reasons given, the Court finds the ALJ's decision is not free of legal error. Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's Merits Brief is **<u>GRANTED</u>**; (2) Defendant's Cross-MSJ is **<u>DENIED</u>**; and (3) the ALJ's decision is **<u>REMANDED</u>** for further proceedings before the SSA.  The Clerk of Court shall enter Judgment accordingly.

**IT IS SO ORDERED**.

Dated:  December **23**, 2020

_____

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE